FILED

2022 Mar-14  PM 02:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| SHEILA DIANE ISBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-01379-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Sheila Diane Isbell, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Doc. 1).[2] Isbell timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I.     Background Facts and Procedural History

Isbell is a veteran of the United States Air Force, where she served as a judge

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

advocate from 1989 to 1997. (Tr. at 100). She was released from active duty in September 1997 and did not work after that time. (Tr. at 55, 101).

After her release from active duty, Isbell applied for disability benefits from the Department of Veterans Affairs (the "VA"), but the VA took about five years to approve her benefits. (Tr. at 105). Isbell's VA disability rating was initially 30%, but after she appealed, her disability rating was raised to 80%. (Tr. at 105, 326). This disability rating entitled Isbell to individual unemployability benefits, retroactively effective to September 1, 1997. (Tr. at 326). The VA's unemployability determination noted Isbell "has not worked since August 31, 1997, the date of discharge from active duty. She further advised that she left her last employment due to her disabilities." (Tr. at 330). That determination also stated Isbell was entitled to individual unemployability because she was "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." (Tr. at 330).

Isbell inquired about DIB in the fall of 2003 but was told she did not have enough work credits because she had not worked for more than five years. (Tr. at 114-15). Isbell did not apply for DIB before 2002 because she was waiting for the VA's disability rating. (Tr. at 115).

In 2017, Isbell was at the VA hospital for an appointment when she stopped at a table set up to assist veterans with finding a job. (Tr. at 115-16). She wanted to

see if there were any jobs she thought she could do, but she did not find anything she was qualified to do or that was practical for her to do. (Tr. at 116). Isbell talked to the representative at the table for some time, and he told her he thought she qualified for DIB. (Tr. at 116). Isbell went home, researched the issue, and determined she had enough work credits to apply. (Tr. at 116).

Isbell applied for DIB in August 2017, alleging a disability onset date of September 1, 1997. (Tr. at 224). Isbell was about 39 years old at the time of her alleged disability onset and 59 years old when she applied for DIB. (Tr. at 129). Isbell has more than four years of college education and past relevant work as a judge advocate. (Tr. at 100). Although she has not practiced law since her release from active duty, Isbell has maintained an active Alabama law license. (Tr. at 101).

Isbell's claim was denied, and she requested a hearing before an administrative law judge ("ALJ"). (Tr. at 145). Following the hearings in April and October 2019, the ALJ denied Isbell's claim. (Tr. at 11-23). The Appeals Council denied review of the ALJ's decision (Tr. at 1-3), and that decision became the final decision of the Commissioner, *see Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Isbell filed this action. (Doc. 1).

## II.    Statutory and Regulatory Framework, and the ALJ's Evaluation

To establish eligibility for disability benefits, a claimant must show "the

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ found Isbell met the SSA's insured status requirements through December 31, 2002. (Tr. at 13). She further determined Isbell did not engage in substantial gainful activity from her alleged onset date of September 1, 1997, through December 31, 2002. (Tr. at 13).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe

physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Isbell had the following severe impairments through her date last insured: carpal tunnel syndrome, degenerative disc disease, degenerative joint disease in the right shoulder, major depressive disorder, anxiety, obesity, chronic sinusitis, and hypothyroidism. 20 C.F.R. § 404.1520(c); (Tr. at 13). The ALJ noted the medical evidence pointed to the possibility that Isbell's impairments did not impose more than minimal limitations on a persistent basis; however, viewed in the light most favorable to Isbell, the ALJ found the combination of her impairments would cause limitations and symptoms sufficient to rise to the level of severe impairments. (Tr. at 13-14). The ALJ therefore proceeded through the sequential evaluation process.

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d).

At the third step, the ALJ determined Isbell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 14).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

If the claimant is not capable of performing her past relevant work, the Commissioner will determine whether the claimant can perform other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant can perform other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

Before proceeding to the fourth step, the ALJ found Isbell's impairments

could reasonably be expected to cause some of her alleged symptoms through her date last insured but Isbell's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 17). The ALJ determined Isbell had the following RFC through December 2022, her date last insured:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can frequently climb ramps and stairs, stoop, kneel, crouch and crawl; she should never climb ladders, ropes or scaffolds, she can only occasionally reach overhead with her right upper extremity; she can frequently handle, finger and feel with her right upper extremity; she can have only occasional exposure to extremes of cold as well as full body vibration; she can have only occasional exposure to atmospheric conditions, i.e. dusts, odors, fumes and pulmonary irritants; she should have no exposure to hazards such as unprotected heights and dangerous machinery; she would be able to understand, remember and carry out simple instructions and tasks for two hour blocks of time; she could tolerate changes in the workplace that are infrequent and gradually introduced; she can have occasional work-related interaction with supervisors, co-workers and the general public.

(Tr. at 16). In evaluating Isbell's RFC, the ALJ observed the record contained a decision by another government agency, the VA. The VA determined Isbell's disability rating was 80% and Isbell was entitled to individual unemployability benefits. (Tr. at 326). The ALJ disagreed with the VA's determination because it addressed only the fact that Isbell had not found gainful legal-related employment, but it did not address whether Isbell could find "any" employment, which is the standard the ALJ must apply. (Tr. at 20-21). Because of the "vast disparity" in the

7

way the two agencies evaluate disability, the ALJ found the VA's disability determination was neither valuable nor persuasive. (Tr. at 21). The ALJ did, however, consider the medical records underlying the VA's disability finding to determine Isbell's RFC. (Tr. at 21).

At the fourth step, the ALJ concluded Isbell was unable to perform any past relevant work. (Tr. at 21). Proceeding to the final step, the ALJ found Isbell was a "younger individual" on her date last insured (December 31, 2002), with at least a high school education and the ability to communicate in English. (Tr. at 21). Transferability of job skills was not material to the disability determination because the Medical-Vocational rules supported a finding that Isbell was not disabled, whether or not she had transferable job skills. (Tr. at 21). Relying on testimony from a vocational expert, the ALJ concluded Isbell was, through the date last insured, capable of successfully adjusting to other work that existed in significant number in the national economy for an individual with Isbell's age, education, work experience, and RFC. (Tr. at 22). Based on this evidence, the ALJ ultimately concluded Isbell was not disabled at any time between September 1, 1997, and December 31, 2002, and therefore was not entitled to benefits. (Tr. at 23).

## III.   Standard of Review

A court's role in reviewing claims brought under the Social Security Act is narrow. Its review is limited to determining (1) whether there is substantial evidence

in the record as a whole to support the findings of the Commissioner, and (2) whether

the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F.

App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the

Commissioner, provided those findings are supported by substantial evidence, but

closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400

(11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de*

*novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's]

failure to apply the correct law or to provide the reviewing court with sufficient

reasoning for determining that the proper legal analysis has been conducted

mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## IV.   Analysis

Isbell challenges the ALJ's decision for two reasons. First, Isbell argues the

ALJ erred because she accorded no weight to the VA's disability rating and Eleventh

Circuit precedent holds a VA rating is entitled to great weight. (Doc. 12 at 18-19).

Second, Isbell contends the ALJ failed to properly determine her disability onset

date pursuant to Social Security Ruling 83-20. (Doc. 12 at 21).

### a.  The 100% VA disability rating

The ALJ found the VA's disability determination was neither valuable nor

persuasive because of the "vast disparity" in the VA's evaluation of disability and

that of the SSA. (Doc. 12 at 21). Isbell agrees the VA relies on different criteria than the SSA, but she asserts the ALJ can neither ignore the VA's determination nor give it little weight. (Doc. 12 at 21). In support of her argument, Isbell cites several cases that reversed an ALJ's decision to afford little weight to the VA's disability determination, including *Brown-Gaudet-Evans v. Commissioner of Social Security,* 673 F. App'x 902 (11th Cir. 2016) ("It is the law of this Circuit that '[a]lthough the V.A.'s disability rating is not binding on the [SSA], it is evidence that should be given great weight.'") (*citing Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984)).

In response, the Commissioner notes Isbell applied for benefits after March 27, 2017, and therefore the new regulations apply to her application. (Doc. 13 at 4). One of the new regulations changes the ALJ's analysis of other governmental agency decisions:

> Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, . . . employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.

20 C.F.R. § 404.1504 (2020) (effective March 27, 2017). Another revised regulation explains that decisions from other governmental agencies, such as the VA, are "inherently neither valuable nor persuasive to the issues of whether [claimants] are

10

disabled or blind under the Act." *See* 20 C.F.R. § 404.1520b(c). The Commissioner

also observes that the ALJ did evaluate the VA's disability rating but found it neither

valuable nor persuasive. (Doc. 13 at 5).

The court agrees with the Commissioner. The cases Isbell cites predate the

new, revised regulations, which relieve the ALJ of an obligation to assign any weight

to or analyze the VA disability rating; the ALJ must, however, consider all the

evidence supporting the VA's decision. 20 C.F.R. § 404.1504. But even *Brown-*

*Gaudet-Evans* recognizes an ALJ is not required to give controlling weight to the

VA's disability determination and should make her own determination regarding a

claimant's disability. 673 F. App'x at 904. *Brown-Gaudet-Evans* further requires the

ALJ to "seriously consider and closely scrutinize the VA's disability determination

and [] give specific reasons if [she] discounts that determination." *Id.* That is exactly

what happened in this case.

Here, the ALJ properly considered all the evidence supporting the VA's

decision. For example, the ALJ considered Isbell's VA medical records showing she

had a history of right shoulder dislocations and eventual shoulder stabilization

surgery in November 1995; mild degenerative disc disease in October 2001; normal

cervical, lumbar, and thoracic spine x-rays in April 2002; normal muscle strength in

her upper and lower extremities in October 2002; and good range of motion in her

hips, knees, and ankles with no instability in October 2002. (Tr. at 19). The ALJ also

11

considered the VA medical records about Isbell's treatment for sinusitis and hypothyroidism, as well as the records showing Isbell tolerated her depression medicine without ill effect in December 2002. (Tr. at 19). The ALJ noted, despite Isbell's subjective complaints of pain, objective testing did not reveal significant abnormalities and physical examinations and observations did not reveal significant functional limitations beyond those accommodated in Isbell's RFC. (Tr. at 19).

Finally, the ALJ considered the VA's disability rating. She disagreed with the VA's conclusion because it only addressed Isbell's ability to find legal-related work and did not address whether Isbell could find any employment. (Tr. at 19). After considering all the evidence in the record, the ALJ found Isbell's functional abilities, through her last insured date of December 31, 2002, indicated a good tolerance for some level of work activity. (Tr. at 19). In reaching this conclusion, the ALJ considered the evidence supporting the VA's disability decision and explained why she determined the VA's decision was neither valuable nor persuasive. Therefore, the ALJ complied with her obligations under 20 C.F.R. § 404.1504, and she did not err in according no weight to the VA disability rating.

### b. The disability onset date

Isbell also argues the ALJ violated Social Security Ruling 83-20 because she did not seek medical advice about the onset date of Isbell's alleged disability. (Doc. 12 at 21). According to SSR 83-20, "[i]n addition to determining that an individual

12

is disabled, the decisionmaker must also establish the onset date of disability." SSR 83-20, 1983 WL 31249, at *1. SSR 83-20 also requires an ALJ to "call on the services of a medical advisor when onset must be inferred." *Id.* at *3. Isbell's argument about SSR 83-20 is misplaced for two reasons.

First, SSR 83-20 was rescinded and replaced by SSR 18-01 for all claims pending with the Commissioner on or after October 2018, including Isbell's. *See* SSR 18-01p, 2018 WL 4945639, at *7. Under SSR 18-01p, "[t]he decision to call on the services of a[] [medical examiner] is always at the ALJ's discretion," and "[n]either the claimant nor his or her representative can require an ALJ to call on the services of a[] [medical examiner] to assist in inferring the date that the claimant first met the statutory definition of disability." *Id.* Because SSR 83-20 has been rescinded and replaced, its requirements are outdated and do not apply here. *See Jarmon v. Kijikazi*, No. 4:20-cv-1072-CLM, 2022 WL 662301, at *5 (N.D. Ala. Mar. 4, 2022).

Second, in several unpublished opinions, the Eleventh Circuit has found SSR 83-20 applies only *after* the ALJ finds the claimant is disabled. *See Castleman v. Comm'r, Soc. Sec. Admin.*, 824 F. App'x 927, 929 (11th Cir. 2020); *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010). Here, the ALJ found Isbell was not disabled. (Tr. at 23). Even if SSR 83-20 controlled in Isbell's case,

the ALJ was not required to use a medical examiner to determine Isbell's disability

onset date because she found Isbell was not disabled. Therefore, the requirements of

SSR 83-20 were never implicated. *See Jarmon*, 2022 WL 662301, at *5.

SSR 18-01, rather than SSR 83-20, applied to the ALJ's evaluation of Isbell's

claim for benefits. But even if SSR 83-20 applied, the ALJ was not required to use

a medical examiner to determine Isbell's disability onset date because she concluded

Isbell was not disabled. Accordingly, the ALJ was not required to consult a medical

expert to determine the onset date of Isbell's alleged disability.

## V.   CONCLUSION

Upon review of the administrative record and considering all of Isbell's

arguments, the court finds the Commissioner's decision is supported by substantial

evidence and is in accord with applicable law. Accordingly, the Commissioner's

decision is due to be affirmed.

A separate order will be entered.

**DONE** this 14th day of March, 2022.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE

14